SMITH *v.* ARKADELPHIA MILLING COMPANY.

Opinion delivered April 5, 1920.

1. FRAUDULENT CONVEYANCES—SUFFICIENCY OF EVIDENCE.—Evidence *held* to show that a sale of staves by an insolvent debtor to one not engaged in the stave business for an inadequate price was for the purpose of defrauding a creditor.

2. FRAUDULENT CONVEYANCES—INADEQUACY OF PRICE.—The sale of white oak staves, a commodity readily marketable, for an inadequate price constitutes a strong badge of fraud.

3. FRAUDULENT ' CONVEYANCES — CANCELLATION.—Where a sale of staves by an insolvent debtor was made to defraud a creditor and for a grossly inadequate price, and the purchaser had full knowledge of the seller's fraudulent intent, the creditor was entitled to a cancellation of the sale.

4. FRAUDULENT CONVEYANCES—PURCHASER LIABLE FOR GOODS RESOLD. —Where staves were sold to a purchaser with notice, for the purpose of defrauding a creditor, the creditor was entitled, not only to have the staves subjected to payment of the creditor's debts, but also to require the purchaser to refund the price of the staves which he had resold.

5. FRAUDULENT CONVEYANCES—SEQUESTRATION OF PROPERTY.—Where, in a suit to foreclose a mortgage, a receiver was appointed to take charge of staves in a mill yard, and a purchaser of the staves intervened, whereupon plaintiff filed a cross-complaint against the intervener to set aside the sale as fraudulent, the court's custody of the staves constituted a sequestration, if that was necessary.

6. FRAUDULENT CONVEYANCES—SEQUESTRATION UNNECESSARY, WHEN. —In view of Kirby's Digest, section 3313, where there is personal service of defendant's person, sequestration of his property is unnecessary to give the court jurisdiction to cancel a conveyance as fraudulent.

7. APPEAL AND ERROR—RIGHT TO COMPLAIN.—In a suit wherein plaintiff sought to set aside a conveyance as fraudulent as to his creditors, the purchaser could not complain because the court failed to marshal the debtor's assets, where he did not ask therefor, and it was not shown that there was other property sufficient to pay the indebtedness.

8. FRAUDULENT CONVEYANCES—COMPLETE RELIEF.—In a suit to set aside a fraudulent conveyance of personal property, the court properly adjudicated the rights of the parties respecting all of the property in controversy, including some that had been shipped into an adjoining county, and was involved in another suit, as the first adjudication would be conclusive as to the rights of the parties.

Appeal from Montgomery Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

*John H. Crawford* and *Dwight H. Crawford,* for appellant.

1. The description as to the location of the property in the so-called equitable mortgage is void for uncertainty and it does not attempt to convey after-acquired property. 108 Ark. 162; 71 S. W. 797.

2. The Milling Company by virtue of its several stave contracts had no lien upon the staves by Brown to Smith which it can enforce against Smith. Kirby's Digest, § 5396. The mortgage was neither acknowledged nor recorded. 43 Ark. 464; 96 *Id.* 503; 97 *Id.* 398; 118 *Id.* 192; Kirby's Dig. § 510; 132 Ark. 166. See also 27 Cyc. 984; 19 R. C. L. p. 274, § 44; 9 Ark. 112; 22 *Id.* 136.

3. Chancery court should not appoint receivers to take charge of and sell property on which no lien existed and which was not the subject of litigation. 68 Neb. 222; 63 L. R. A. 791-798; 44 N. E. 585-589; 203 L. R. A. 1916 B. 1182; 49 Ark. 117-121; 23 R. C. L. p. 13, § 7. The sale was void as to Smith; he had purchased the staves and was in possession.

4. It was error to enter a final decree before the receivers made their final report. Kirby's Digest, § 6352; 15 Ark. 557, 609; 47 *Id.* 532.

5. The assets in the hands of the court should have been marshalled.

6. The appellee is liable to Smith for the value of the staves from the time converted with interest. 72 Ark. 471.

*Joseph S. Utley,* of counsel for appellant.

Appellant has no lien against Smith and the Montgomery Chancery' Court had no jurisdiction to decide the merits of the controversy, etc.

*McMillan & McMillan,* for appellee.

1. The sale was fraudulent and void. Kirby's Dig. § 3658.

2. The findings of the chancellor are not clearly against the preponderance of the evidence, and this court will not disturb them. 132 Ark. 173-179; 1 Crawford's Digest, 307-310. Brown's attempted sale was fraudulent and void, and Smith had knowledge sufficient to put him on notice or at least on inquiry. The appellee had an equitable lien on the staves superior to any of Smith who had actual notice at least of facts to put him on inquiry. 106 Ark. 82; 61 *Id.* 129; 37 *Id.* 511.

3. The agreement is not a mortgage. 3 Pom. Eq. § 12129, p. 230; 39 Ark. 439; 60 *Id.* 595; 2 Summ. 486; 8 Allen, 536; 78 S. W. 340; 91 Ark. 273; 97 *Id.* 536. Equitable liens need not be recorded. 60 Ark. 595; 1 Sup. Ct. Rep. 537.

4. According to the evidence the staves were trust property. 113 Ark. 36; 122 *Id.* 366.

McCULLOCH, C. J. Appellee, Arkadelphia Milling Company, is a corporation engaged in the stave business at Arkadelphia, and in the year 1915 began buying staves from W. W. Brown, who was manufacturing staves in Montgomery County, Arkansas. Brown became indebted to appellee in a large sum of money, and in the year 1916 a contract was entered into between Brown and appellee whereby the former agreed to manufacture and deliver 500,000 or more white oak staves at specified prices. It was stipulated in the contract that the appellee should make advances to Brown and that all indebtedness of Brown to appellee should constitute a lien in appellee's

favor on all stock on the mill yard or yards of Brown. Brown also executed a mortgage to appellee on certain real estate to secure payment of his indebtedness to the latter. The parties proceeded under this contract, and Brown became more heavily indebted to appellee, and in August, 1917, appellee declined to make further advances to Brown for the operation of his stave mill in Montgomery County. The mill was shut down at that time and was not operated thereafter.

Brown was living in Womble, and the stave yard was located about fifteen miles in the country out from Womble, and F. V. Cass, a former employee of Brown, was left in charge of the plant and stave yard. There were about 90,000 staves stacked on the yard. Each of the parties, that is to say appellee and Brown, claimed Cass as his agent or representative in holding possession of the mill. It is unnecessary to a decision of the case to determine whether Cass held possession of the mill and staves on the yard as a representative of appellee or of Brown.

Appellee commenced this action in the Montgomery Chancery Court against Brown on February 23, 1918, to foreclose its mortgage on the real estate, and subsequently obtained an order from the chancellor appointing a receiver to take charge of the staves remaining on the mill yard of Brown in Montgomery County and to restrain Brown from attempting to sell or remove any of the staves. The receivers appointed by the court took charge of all of the staves remaining on the yard and vicinity, but a considerable portion thereof had been removed from the yard by appellant T. J. Smith and sold. Smith claims that he purchased 60,000 of the staves from Brown and paid him for them before the institution of this action, and he filed an intervention in this case disputing appellee's right to claim the staves under its contract or to claim a lien on the staves.

Appellant had removed a portion of the staves before the appointment of the receiver and sold the same, receiving therefor the sum of $697.50. He had also

shipped a car load of the staves to Arkadelphia and the same were taken possession of by appellee. Appellant brought replevin suit in the circuit court of Clark County to recover possession of this car load of staves. That action was removed to the chancery court of Clark County on motion of appellee. Appellee answered the intervention plea of appellant in the present action and made its answer a cross-complaint, alleging that the sale of staves by Brown to appellant was fictitious and fraudulent and made for the purpose of cheating and defrauding appellee and interfering with it in the collection of its debt against Brown. The prayer of the cross-complaint was for recovery from Smith of the sum of $697.50, the price of the staves sold by him; that appellant be restrained from prosecuting the suit in the Clark Chancery Court, and that the rights of the parties in the car load of staves involved in that action be adjudicated in this action, and that appellant recover nothing, either on his intervention plea in this action or on his complaint in the Clark Chancery Court. The cause was heard on testimony introduced in open court and decree was rendered dismissing appellant's intervention and giving appellee the relief prayed for. The intervener, Smith, alone has appealed.

We deem it unnecessary to determine the question debated by counsel, whether or not appellee had an equitable lien under its contract with Brown for the manufacture of staves, for we are of the opinion that, according to the preponderance of the evidence, the charge of fraud and collusion in the sale of staves by Brown to Smith is fully sustained, and that appellee is entitled to have the conveyance set aside as a fraud on its rights as a creditor of Brown, who, according to the undisputed evidence, is insolvent.

A very brief narrative of the testimony will disclose the character of the fraud attempted to be perpetrated by Brown and Smith on appellee.

Smith was not engaged in the stave business, and never had been so engaged. He was a farmer in Faulk-

ner County, and went to Womble, Montgomery County, in search of farm lands to purchase. He fell in there with Brown, who was running a hotel at Womble, and Brown took him out to look at land. This was in January, 1918, and on the 5th day of that month they drove out to Brown's stave mill, which had, as before stated, been shut down since the preceding August, and, according to their testimony, on this trip Brown suggested to appellant the purchase of staves. They stopped at the mill plant and took dinner there that day with Cass, and began negotiations for the sale of 60,000 of the staves. When they got back to Womble the trade was closed that night at the hotel, and appellant gave Brown a check on his bank at Conway for the sum of $200 initial payment on the price of the staves, the check being marked so as to show that it was given for ''timber.'' Payments were made thereafter by appellant to Brown from time to time on the purchase price. Very soon thereafter Brown began, with his employees, to haul the staves off of the yard and dump them in piles along the road. This was done evidently for the purpose of getting them off the stave yards so that appellee could not claim them. Appellant purchased the hotel property from Brown and moved to Womble for the purpose of operating the hotel.

The original purchase of the staves was, as before stated, on January 5, 1918, according to the testimony of Brown and appellant, but the sale was not consummated by the execution of a written bill of sale until February 8, 1918. Appellant denied that he knew anything about the trouble between Brown and appellee or that Brown was financially embarrassed. On the other hand, appellee introduced testimony, particularly that of witness Cass, who testified that on the day appellant and Brown were out at the mill plant he told appellant enough of Brown's condition to apprise him of the fact that Brown was heavily indebted to appellee. He said that he told appellant that the mill was shut down because appellee had quit ''financing'' Brown and had shut the mill down, and that the staves on the yard were in dispute between Brown

and appellee. Cass also testified that about a month after that appellant told him that he believed he could make some money by buying the staves. There is other testimony of statements made by appellant, considerably after the time at which he says he bought the staves, in which he stated that he was thinking of purchasing the staves. There is testimony to the effect that he claimed at that time he was buying timber from Brown, and this is corroborated by the check which appellant claims he gave as the initial payment for the staves, which shows that it was given for the purchase of timber.

The sale was for a grossly inadequate price, and the fact that white oak staves, a commodity readily marketable, was sold for an inadequate price constitutes a strong badge of fraud. The transaction was unusual in that appellant was not engaged in the stave business and knew nothing about the stave business or about the price of staves except what Brown told him and what he read out of the price list or catalogue. The evidence shows plainly that appellant bought the staves at a grossly inadequate price, and that it was done with the full knowledge of Brown's intention to defraud appellee. It is beyond question that Brown was insolvent and that he made the sale to defraud appellee. This being true, appellee was entitled to a cancellation of the sale, regardless of its right to assert a specific lien under the contract. The proof is undisputed that appellee furnished the money to have the staves manufactured and that Brown's contract with appellee called for a sale and delivery of these particular staves. The sale was incomplete, it is true, by reason of the fact that there had been no delivery, but the sale of the staves to another person constituted a breach of the express terms of Brown's contract with appellee, and it but adds to the weight of the fraud perpetrated by Brown in selling the staves to appellant in violation of his contract and for the purpose of hindering appellee in the collection of its debt.

Appellee was entitled, not only to have the staves subjected to the payment of its debt, but to require appel-

lant to refund the price of the staves which he had resold.

It is earnestly contended by learned counsel for appellant that the chancery court was without jurisdiction to render a decree canceling the conveyance, because the property had not been sequestered by an order of attachment. The staves were in the custody of the court, through its receiver, and this constituted a sequestration, if such had been necessary; but where there is a personal service so as to give the court jurisdiction of the person of the defendant, it is not necessary that the property be sequestered and brought within the control of the court in order to give jurisdiction for the rendition of a decree enforcing a lien or canceling a conveyance. This feature of the litigation between appellant and appellee became a suit to set aside a fraudulent conveyance, and it was unnecessary under the statute to first establish the debt in a suit at law against Brown, the debtor. Kirby's Digest, section 3313. The insolvency could be proved in the action in the chancery court to set aside the fraudulent conveyance.

It is also contended that the court should have marshaled the assets of Brown and enforced appellee's claim against the property other than the staves sold to appellant. The answer to that contention is that, in the first place, appellant did not ask for a marshaling of assets and it was not proved that there was sufficient of the other property, in addition to those staves, to pay the indebtedness to appellee. He is, therefore, not in a position to claim that this was an error of the court.

Finally, it is said that the court erred in undertaking to interfere with the jurisdiction of the Clark Chancery Court by adjudicating the rights of the parties in the car load of staves involved in that action. Appellant attempted to split up his cause of action against appellee by bringing one suit in the Clark Circuit Court (which was later transferred to the chancery court of Clark County) for the car load of staves in that county and by intervening in the present action. The staves in Clark County were a part of the staves purchased by appellant

from Brown, and the question involved in the two actions was precisely the same. Therefore, the first adjudication would be conclusive as to the rights of the parties. The chancery court of Montgomery County was correct, therefore, in the present action in adjudicating the whole rights of the parties with respect to the property in controversy, which included the lot of staves shipped by appellant out of Montgomery County and taken over by appellee in Clark County. There was certainly no prejudicial error in so doing, for, if that had not been done, an adjudication of the questions involved in this case would have been conclusive of the rights of the parties in the other case. *Church* v. *Gallic,* 76 Ark. 423; *National Surety Co.* v. *Coats,* 83 Ark. 545.

There is no error in the proceedings, and the decree of the chancery court was correct under the facts.

Affirmed.